FILED
2021 Jun-17  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MAG INDUSTRIES LTD.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.:  2:21-cv-00786-ACA** |
| **KHURRAM NOUMAN,** | } | |
| **AZIZ A. MAJEED,** | } | |
| | } | |
| **Defendants.** | } | |
| | } | |
| | } | |
| | } | |

## MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER

Before the court is Plaintiff MAG Industries, Ltd.'s ("MAG") motion for a temporary restraining order ("TRO") and preliminary injunction.  MAG markets and distributes vape cartridges, batteries, and other related products.  MAG alleges that Defendants Khurram Nouman and Aziz A. Majeed ("Defendants") are selling products that infringe upon MAG's trademark in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), and Alabama common law.

According to MAG's verified complaint, it has been using the trademark CLOUD 8 (the "Mark") in commerce since August 2020 in connection with the sale its vape pen cartridges.  MAG's vape pen cartridges are sold in plastic packaging

that includes a cavity to hold the product and a triangular-style hang hole with the Mark shown in the top right corner of the packaging.  The specific flavor of the cartridge is displayed in script-style font on top of on ombre curve and a stylized cannabis leaf.  The packaging also contains design elements consisting of smoke vapors.  The court will refer to MAG's packaging as the "Trade Dress."

MAG alleges that its distributor purchased several units of vape pen cartridges bearing the Mark from Mr. Nouman (the "Counterfeit Products").  The counterfeit products were sold in packaging that closely resembled the Trade Dress.  MAG alleges that Mr. Nouman works for Mr. Majeed, who operates the same type of businesses where MAG's products are primarily sold.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, MAG now seeks a TRO enjoining Defendants from selling the Counterfeit Products or making use of the MAG's Mark or Trade Dress.  Because MAG has satisfied the requirements of Rule 65 and the Eleventh Circuit, the court **GRANTS** its motion.  (Doc. 10).

Temporary injunctive relief "is an extraordinary remedy." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011).  A court may issue a TRO without notice to the adverse party only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and "(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it

should not be required." Fed. R. Civ. P. 65(b)(1).  Here, MAG has filed a verified complaint (docs. 5, 10-1) and its attorney has certified in writing the efforts that she took to provide Defendants with notice and the reasons notice should not be required (doc. 10 at 6–7 ¶¶ 15, 18–20; doc. 10-2).

To satisfy Rule 65(b)(1)(A) and obtain a TRO, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  MAG satisfies each of these prongs.

MAG sustained its burden of proving a substantial likelihood of success on the merits of its Lanham Act claim.  "To establish a prima facie case under [the Lanham Act], a plaintiff must show (1) that the plaintiff had enforceable . . . rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (quotation marks omitted).  MAG's verified complaint alleges sufficient facts in support of each of these elements.

MAG does not have a federally registered trademark.  But "[e]ven if a mark is not federally registered, the use of another's unregistered, *i.e.*, common law, trademark can constitute a violation . . . of the Lanham Act." *Crystal Ent.*, 643 F.3d

3

at 1320. The court applies a two-part test to establish common-law ownership rights: a plaintiff must present "[e]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* at 1321. In its analysis, the court considers the totality of the circumstances surrounding the trademark's use. *Id.* Further, applying for federal registration "constitute[s] constructive use of the mark." 15 U.S.C. § 1057(c).

MAG's verified complaint demonstrates that it has an enforceable right in its Mark. MAG has been using the Mark since August 2020, and the United States Patent and Trademark Office has accepted MAG's application for use of the Mark. (Doc. 5 at 7 ¶¶ 20–22). Since November 2020, MAG "has sold millions of dollars' worth of its merchandise into the State of Alabama." (*Id.* at 6 ¶ 19). MAG uses its website and social media accounts to advertise and promote products bearing the Mark and Trade Dress. (*Id.* at 5–6 ¶¶14–15). At this stage, MAG has established a substantial likelihood that it will be able to prove that it has an enforceable right in the Mark and Trade Dress.

Next, the court must determine that a likelihood of confusion exists. *Crystal Ent.*, 643 F.3d at 1320. To do so, the court applies seven factors: "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services

offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." *Alliance Metals, Inc. v. Hinely Indus.*, 222 F.3d 895, 907 (11th Cir. 2000). "The last factor, actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion." *Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010).

Here, at least four of the factors weigh strongly in favor of MAG's claim, and none of the factors weigh against it. The similarity between MAG's mark and the counterfeit products is striking; the two products are almost indistinguishable. (*See* Doc. 5-3). MAG also alleges that Defendant Majeed operates "convenience stores/gas stations," the same primary sales method utilized by MAG. (Doc. 5 at 6, 9 ¶ 17, 33). Defendant Nouman's assertion that his products were "good fakes" is strong evidence that Defendants intended to gain a competitive advantage by associating the counterfeit product with the Mark. (*Id.* at 8 ¶ 29). Finally, and most persuasively, MAG was alerted to the existence of the counterfeit products by a customer that "notified the distributer that his Cloud 8 product was different and 'looked weird.'" (*Id.* at 7–8 ¶ 25). After considering the seven relevant factors, the court is convinced that there is a serious likelihood of confusion between MAG's product and the product the Defendants sold. Accordingly, the complaint establishes

a prima facie case under § 1125(a)(1), and at this stage, the allegations in the complaint satisfy the court that MAG has a substantial likelihood of success on the merits of its Lanham Act claim.

MAG has also demonstrated that it will suffer irreparable harm in the absence of a temporary injunction.  "An injury is irreparable if it cannot be undone through monetary remedies."  *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (quotation marks omitted).  "Even when a later money judgment might undo an alleged injury, the alleged injury is irreparable if damages would be 'difficult or impossible to calculate.'" *Id.* (quoting *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. Unit B June 1981)).  In a trademark action, "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (cleaned up).

Here, it would be difficult or impossible to calculate the harm done to MAG's reputation and customer good will by the continued sale of the allegedly counterfeit product.  Allowing Defendants to continue selling the counterfeit products removes MAG's ability to control the quality of the product sold under its trademark.  Further, the similarities between the two products represents a significant risk of confusion

to customers.  Accordingly, the court is satisfied that MAG faces irreparable harm by the continued sale of the counterfeit product.

The court also finds that the threatened injury to MAG outweighs any potential harm to Defendants.  The threatened harm to MAG of the continued sale of products sold under the Cloud 8 trademark is significant and outweighs the potential harm of enjoining Defendants' use of the Mark and Trade Dress.

Finally, the public interest supports the issuance of a TRO.  "[T]rademark actions are common venues for the issuance of preliminary injunctions." *McDonald's Corp.*, 147 F.3d at 1310.  This is in part because the public is served by injunctions that prevent the sale of counterfeit products that may mislead the public and undermine trust in brand trademarks.

On balance, The Eleventh Circuit's factors weigh in favor of granting MAG's motion.  MAG will suffer immediate and irreparable injury before Defendants can be heard in opposition, MAG has made reasonable efforts to notify Defendants of its motion, and MAG's attorney has satisfied the requirements of Rule 65(b)(1)(B).  Accordingly, the court **ORDERS** as follows:

(1) The court **GRANTS** Plaintiff MAG Industries, Ltd.'s, motion for a temporary restraining order.  (Doc. 10).  The court is satisfied that the threat of immediate, irreparable injury to MAG justifies the court's

decision to grant a temporary restraining order without notice to Defendants.

(2) Defendants Khurram Nouman and Aziz A. Majeed are **RESTRAINED** and **ENJOINED** from:

a. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products or any other products bearing the Mark, the Trade Dress, and/or marks or trade dress that are confusingly or substantially similar to, identical to and constitute a counterfeiting and/or infringement of the Mark and/or Trade Dress; and

b. directly or indirectly infringing in any manner MAG's Mark and/or Trade Dress; and

c. using any reproduction, counterfeit, copy or colorable imitation of MAG's Mark or Trade Dress, to identify any goods or services not authorized by MAG; and

d. using MAG's Mark and/or Trade Dress or any other marks and/or artwork that are confusingly or substantially similar to the Mark and/or Trade Dress on or in connection with manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products; and

e. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with MAG, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and MAG; and

f. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with:

   i. Counterfeit Products;

   ii. assets relating to Counterfeit Products, including proceeds from the sale thereof; and/or

   iii. any computer files, data, business records, text messages, emails, documents or any other records or evidence relating to Defendants' manufacture, importation, exportation,

advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

g. knowingly instructing or aiding or abetting any other person or business entity in engaging in any of the activities prohibited by this order.

(3) This temporary restraining order applies to the Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of the foregoing persons.

(4) MAG is not required to post a bond because this temporary restraining order will result in little to no financial harm to the Defendants.

(5) This temporary restraining order will expire on **July 1, 2021**.

(6) The Court will revisit the issue of a bond at the hearing on MAG's request for a preliminary injunction.

(7) A hearing on the motion for preliminary injunction is set for **June 24, 2021, at 1:00 PM**, before Judge Annemarie Carney Axon, courtroom 6B, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama.  MAG's brief in support of a preliminary injunction is due **on or before June 21, 2021**; Defendants' brief in response is due **on or before June 23, 2021.**

(8) Upon entry of this order, the court **DIRECTS** MAG to serve Defendants with a copy of the order at all last known physical addresses and by any known email addresses.

**DONE** and **ORDERED** this June 3, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE